# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RAYMOND DRUMGOOLE, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-17-0564 |
| OFFICER PAUL PASTOREK, | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Raymond Drumgoole filed a civil rights action challenging his arrest and pre-trial incarceration for unlawful possession of a firearm. ECF No. 1. After the Court informed him of the deficiencies in his original Complaint, Drumgoole filed an Amended Complaint[1] naming Officer Paul Pastorek as the sole Defendant. ECF No. 7. Pastorek moved to dismiss the Complaint, ECF No. 12, which Drumgoole opposed, ECF No. 16. The matter is now ripe for review. For the reasons that follow, Pastorek's Motion to Dismiss is GRANTED.

**I.   Background**

On May 15, 2015, Pastorek conducted a traffic stop of a car in which Drumgoole was a passenger. ECF No. 7 at 2. Drumgoole states that the basis for the traffic stop was that there was no license plate affixed to the car's front bumper, which Pastorek says was a violation of Maryland law. *See* Md. Code Ann. Transp., § 13-411. *Id.*; ECF No. 12-1 at 4. A license plate was on the car's dashboard. ECF No. 7 at 2; ECF No. 16 at 1-2.

---

[1] The Amended Complaint was incorrectly docketed as a supplement to the original Complaint in error. Because the Amended Complaint entirely supplanted the original Complaint, it is properly construed as an Amended Complaint. *See* Wright & Miller, 6A *Fed. Prac. & Proc. Civ.* § 1504 (3d ed.) ("Amended and supplemental pleadings differ in two respects. The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." (footnote omitted)). However, because this mislabeling has little impact in practice, *see id.*, and because the parties treat the document at ECF No. 7 as the sole Complaint, the mislabeling is a distinction without a difference here.

A second officer appeared on the scene and was standing "at the passenger side window observing [Drumgoole]." ECF No. 7 at 3. While the second officer was observing Drumgoole, the driver of the car, Monique Mason, exited the car to speak with Pastorek. *Id.* at 2-3; *see* ECF No. 12-1 at 4 (stating name of driver). Drumgoole states that "[a]ccording to the primary ofc. Paul Pastorek police report he state that the driver told him that I must have put the gun in her purse when she left the vehical [sic] to speak to the primary ofc." ECF No. 7 at 3.

Drumgoole was removed from the car. Pastorek then found a gun inside Mason's purse. Both Drumgoole and Mason denied ownership of the gun and both were arrested and charged with possession of a handgun. *Id.* at 2-4. According to Drumgoole, when Mason was interviewed by another officer following her arrest, she admitted that "she put the gun in the purse," but Drumgoole continued to be detained on the handgun charge. *Id.* at 3. Drumgoole was unable to pay the $500,000 bail and remained detained for 11 months pending trial. Drumgoole was ultimately acquitted of all charges. *Id.* at 4.

Drumgoole has filed suit, asserting that Pastorek violated his constitutional rights by falsely arresting and imprisoning him. *Id.* at 4-5. At base, Drumgoole challenges the reasonableness of his arrest for handgun possession because Mason could not credibly be believed as to having seen Drumgoole put the gun in Mason's pursue while a fellow officer stood watch. *Id.* at 2-3. Pastorek moved to dismiss Drumgoole's Complaint, arguing that Drumgoole failed to state a claim because his arrest was plainly supported by probable cause and, in any event, Pastorek was entitled to qualified immunity. ECF No. 12-1.

## II.  Standard of Review

Pastorek moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. When reviewing a Rule 12(b)(6) motion, a court must determine whether

A second officer appeared on the scene and was standing "at the passenger side window observing [Drumgoole]." ECF No. 7 at 3. While the second officer was observing Drumgoole, the driver of the car, Monique Mason, exited the car to speak with Pastorek. *Id.* at 2-3; *see* ECF No. 12-1 at 4 (stating name of driver). Drumgoole states that "[a]ccording to the primary ofc. Paul Pastorek police report he state that the driver told him that I must have put the gun in her purse when she left the vehical [sic] to speak to the primary ofc." ECF No. 7 at 3.

Drumgoole was removed from the car. Pastorek then found a gun inside Mason's purse. Both Drumgoole and Mason denied ownership of the gun and both were arrested and charged with possession of a handgun. *Id.* at 2-4. According to Drumgoole, when Mason was interviewed by another officer following her arrest, she admitted that "she put the gun in the purse," but Drumgoole continued to be detained on the handgun charge. *Id.* at 3. Drumgoole was unable to pay the $500,000 bail and remained detained for 11 months pending trial. Drumgoole was ultimately acquitted of all charges. *Id.* at 4.

Drumgoole has filed suit, asserting that Pastorek violated his constitutional rights by falsely arresting and imprisoning him. *Id.* at 4-5. At base, Drumgoole challenges the reasonableness of his arrest for handgun possession because Mason could not credibly be believed as to having seen Drumgoole put the gun in Mason's pursue while a fellow officer stood watch. *Id.* at 2-3. Pastorek moved to dismiss Drumgoole's Complaint, arguing that Drumgoole failed to state a claim because his arrest was plainly supported by probable cause and, in any event, Pastorek was entitled to qualified immunity. ECF No. 12-1.

## II.  Standard of Review

Pastorek moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. When reviewing a Rule 12(b)(6) motion, a court must determine whether

the complaint includes facts sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). A plaintiff must plead facts to support each element of the claim to satisfy the standard. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). In so assessing, the Court takes as true all well-pleaded factual allegations and makes all reasonable inferences in the plaintiff's favor. *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court does not credit conclusory statements or legal conclusions, even when couched as allegations of fact. *See Iqbal*, 556 U.S. 678–79; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 562. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

### A. Qualified Immunity

Pastorek argues that this action should be dismissed because he is entitled to qualified immunity. The purpose of qualified immunity is to ensure that government officials performing discretionary functions, like police officers, can "perform their duties free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski,* 942 F.2d 257, 260 (4th Cir. 1991). Without qualified immunity, a substantial risk exists that fear of personal liability and desire to avoid harassing litigation will "unduly inhibit officials in the discharge of their

3

duties." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987). Accordingly, government officials are entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). *Accord Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992).

The resolution of a qualified immunity defense is a two-pronged inquiry, requiring the court to determine: (1) whether the facts established by the plaintiff make out a violation of a federal right; and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan, 555 U.S. 223, 232 (2009).* Accordingly, government officials are entitled to qualified immunity for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[Q]ualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992))

**B.     The Stop**

In his initial Complaint, Drumgoole does not challenge the constitutionality the traffic stop itself, and rather raises this argument for the first time in his response. On this basis alone, therefore, the Court may find this claim to be unpreserved. That said, the Court will reach the merits of the argument because Drumgoole proceeds pro se, and to clarify for the parties that it cannot survive challenge.

Drumgoole essentially contends the officer lacked probable cause to stop the vehicle because the license plate displayed on the dashboard complies with Md. Code Ann., Transp.

4

(MTA) § 13-411. ECF No. 16 at 1-2. Taking the facts as pleaded in the light most favorable to Drumgoole, Pastorek had sufficient probable cause to stop the vehicle. The Maryland Court of Special Appeals has specifically held that an officer may stop a vehicle for violating MTA § 13-411 when the front license plate is not affixed to the front bumper and instead is resting on the dashboard. *Bolding v. Kozay*, No. 0246, Sept. Term, 2015, 2016 WL 7589975, *1, 8 & n.1 (Md. Ct. Spec. App. Dec. 29, 2016). Section 13-411 further requires that the license plate be "attached" and "securely fastened," to the "front" of the car. § 13-411(a). Accordingly, where as here, an officer observes a license plate not so affixed, he retains probable cause to stop the vehicle for a violation of MTA § 13-411. *Id.* Because Pastorek properly stopped the vehicle, the stop did not violate any of Drumgoole's constitutional rights. Any claim grounded in the constitutionality of the stop, therefore, must fail.

### C. Arrest

Pastorek argues that dismissal is warranted because he likewise retained probable cause to arrest Drumgoole for gun possession. The Court agrees. Probable cause exists if, at the point of arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "A finding of probable cause is based upon a practical assessment of the totality of the circumstances." *United States v. Garcia*, 848 F.2d 58, 60 (4th Cir. 1988) (citing *Illinois v. Gates*, 462 U.S. 213, 241 (1983)).

Taking the facts alleged in the Complaint as true, Drumgoole and Mason were both in the vehicle and in close proximity to a firearm found in a purse inside the car. During the stop and prior to Drumgoole's arrest, Mason informed Pastorek that Drumgoole had put the gun in her

5

purse when she left the car.² Pastorek then searched the purse, found the gun, and arrested both Drumgoole and Mason on suspected gun possession. These facts supply Pastorek with probable cause to suspect Drumgoole possessed the firearm, albeit jointly with Mason.

Drumgoole in response makes much of the fact that a second officer stood post next to Drumgoole while Mason exited the car and told Pastorek about the gun. Drumgoole more particularly argues that because the second officer "never once observe me make any suspicious movements at all . . . [and] never once communicated to the primary ofc. Nor did he write a report about me making any suspicious movements," Drumgoole could not have possibly placed the handgun in the purse, and Mason's statement otherwise could not have been credible, thus rendering his arrest unconstitutional. ECF No. 7 at 3. Drumgoole further appears to misapprehend the law of possession, arguing that only one individual can possess the handgun, and that possession is the same as ownership. *See* ECF No. 16 at 4 ("[T]he gun was in the drivers [sic] purse and in the driver's car, so that makes it the drivers [sic] gun. Ofc. Pastorek doesn't need the driver to admit ownership for something that he was supposed to just charge the driver for.").

First with respect to the applicable law on possession -- a person can possess a handgun even if the person does not own it, and possession may be joint. *See, e.g., State v. Gutierrez*, 130 A.3d 985, 994 (Md. Ct. App. 2016) (affirming codefendants convictions for possession because trier of fact could have concluded that codefendants had "joint constructive possession" of the gun); *Hall v. State*, No. 0709, Sept. Term, 2015, 2016 WL 2944041, at * 6 (Md. Ct. Spec. App.

---

² It bears noting that Pastorek's police report is unclear as to whether Mason reported Drumgoole placing the gun in her purse before or while she exited the vehicle. ECF No. 19 ("Ms. Mason stated that it was Mr. Drumgroole's [sic] handgun and that he placed it in her pocketbook when she exited the vehicle to speak with this officer."). Drumgoole reads the report to mean that Mason reported he placed the gun in her purse as Mason exited the vehicle. However, an equally plausible reading is that the phrase "when she exited the vehicle" indicates the time at which Mason told Pastorek about Drumgoole having put the gun in her purse earlier in time. That said, the Court has analyzed the sufficiency of Drumgoole's claims by construing these facts most favorably to Drumgoole.

May 17, 2016); *see also United States v. Tirrell*, 120 F.3d 670, 676 (7th Cir. 1997) ("Joint possession simply recognizes that more than one individual can exercise control over a firearm. . . . [I]n close quarters such as a car, a jury likely would have an easier time concluding that multiple individuals exercised control over a particular weapon."). Drumgoole's misapprehension of the law does not undermine Pastorek's probable cause determination at the time he arrested Drumgoole.

More critically, once an officer has probable cause to arrest, the officer need not investigate further to confirm or dispel his basis for so concluding. *See, e.g., Branch v. Gorman*, 2012 WL 4470440, at *5 (D. Minn. Sept. 27, 2012), *aff'd*, 742 F.3d 1069 (8th Cir. 2014). Even if Pastorek possessed some question about Mason's statement that Drumgoole had placed the gun in her purse, this does not necessarily negate probable cause. Indeed, if Pastorek had conferred with his fellow officer regarding that officer's observations, a reasonable officer in Pastorek's position still retained probable cause based on Drumgoole's close proximity to the firearm and Mason telling Pastorek that she just saw Drumgoole put the gun in the purse. Because Drumgoole's arrest is supported by probable cause, Pastorek is entitled to qualified immunity on any challenge arising from this arrest.

### D. False Imprisonment and Malicious Prosecution

Likewise, Drumgoole's false imprisonment and malicious prosecution claims cannot survive challenge. These claims are likewise based on Pastorek's lacking probable cause to arrest him. Accordingly, because the Court has found that Pastorek had probable cause to arrest Drumgoole, the false arrest and malicious prosecution claims cannot survive. Additionally, the Complaint does not plausibly aver that Pastorek was involved in Drumgoole's continued

detention or prosecution. Drumgoole's false imprisonment and malicious prosecution claims against Pastorek, therefore, must be dismissed.

### E.  State Law Claims

To the extent the Complaint has averred any companion state common law tort claims, the Court declines to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). These claims are dismissed without prejudice so that Drumgoole is free to refile them in state court.

## IV.  Conclusion

Pastorek's Motion to Dismiss shall be granted as to the federal claims, and the state claims will be dismissed without prejudice. A separate Order follows.

| | |
|---|---|
| <u>    7/20/18    </u><br>Date | <u>        /S/        </u><br>Paula Xinis<br>United States District Judge |